MATTER OF S—— AND L—— AND P——

In VISA PETITION Proceedings

VP 13–I–45664
VP 13–I–45870
VP 13–I–45281

*Decided by Board November 7, 1958*

**Nonquota status—Spouse of United States citizen—Recognition of foreign divorce decree and validity of subsequent marriage in Philippines.**

Philippine law does not bar recognition of American divorce obtained by naturalized United States citizen husband (formerly a Philippine national) dissolving marriage contracted in Philippine Islands with Philippine spouse. Husband's subsequent marriage in Philippine Islands held valid, permitting acquisition of nonquota status by second wife.

#### BEFORE THE BOARD

**Discussion:** The cases come forward on appeal from the decisions of the district director dated May 15, April 10, and July 9, 1958, respectively, denying the visa petitions on the ground that a second marriage cannot be lawfully effected in the Philippines when the previous marriage has been terminated in the United States by divorce.

These cases have been combined in consideration of the appeals because they all involve basically the same facts. The petitioners are all natives and former citizens of the Philippine Republic. They were all previously married in the Philippine Islands to Filipino girls. Petitioner S—— was first married on June 16, 1940, in the Philippine Islands. This marriage was terminated by death on April 9, 1946, and the petitioner married a second time on May 11, 1951, in the Philippine Islands. The petitioner was naturalized on November 14, 1946, and he terminated his second marriage by a Colorado divorce which he obtained on September 20, 1956. His third marriage, to the beneficiary, occurred on February 7, 1958, in the Philippine Islands.

Petitioner L—— was first married on January 4, 1952, in the Philippine Islands. He became a naturalized citizen of the United States on January 18, 1954. He obtained a divorce from his first wife on February 20, 1958, in California and married the bene-

ficiary on March 11, 1958, in the Philippine Islands. Counsel states that the petitioner was a United States resident even at the time of the first marriage.

The third petitioner, P——, was first married in the Philippine Islands on September 24, 1950. He became a naturalized citizen of the United States on January 16, 1953, and obtained a divorce from his wife in California on September 13, 1957. He married the beneficiary in the Philippine Islands on November 3, 1957.

The facts then present a pattern common to all the cases. In each case the petitioner, a native-born Filipino, married a Filipino girl in the Philippine Islands, came to the United States and was naturalized as a United States citizen, then obtained a divorce in the United States and thereafter returned to the Philippine Islands to marry a Filipino girl. The significant characteristic common to all these cases is that the petitioner in each case was a United States citizen at the time he obtained the divorce from his previous wife in the United States and of course was a United States citizen at the time of the subsequent marriage. Therefore, insofar as Philippine law was concerned, he had the status of an alien (a United States citizen), who had obtained a foreign divorce from his first Filipino wife and then had married a second Filipino girl.

The denial in each case was based upon a reply to an inquiry dated December 3, 1957, to the Consulate General of the Philippines at San Francisco, California, couched in general terms requesting information as to whether a person who was previously married to a national of the Philippines, now residing in the Philippine Islands, who had obtained a divorce in the United States, would have his second marriage in the Philippine Islands recognized under Philippine law as a valid marriage. The response to this query was that the divorce obtained in the United States by the husband from his first Filipino wife whom he married in the Philippines could not be recognized in the Philippines in view of Article 17, paragraph 3, of the Civil Code which provides as follows:

Prohibitive laws concerning persons, their acts or property, and those which have for their object public order, public policy and good customs shall not be rendered ineffective by laws or judgments promulgated, or by determinations or conventions agreed upon in a foreign country.

The file indicates that this communication from the Philippine Consulate General was the deciding factor in denying the visa petitions. In view of the fact that the communication was in response to a general question which had not specifically set forth the nationality status of the petitioner, and in view of the broad language of the section of Philippine law referred to, the communication does not appear to furnish an authoritative basis upon which to predicate a denial.

The information which follows was obtained from Jovito R. ilonga's book on "Private International Law" (Manila, 1957). 'ith the enactment of the new Civil Code, absolute divorce (a nculo) has been eliminated in the Philippines; only legal separa- on—otherwise known as relative divorce, legal separation or di orce *a mensa et thoro* (from bed and board)—by judicial inter- ention, can be resorted to by the spouses.[1] Under the former law n divorce, the grounds for divorce in the Philippines were adultery n the part of the wife or concubinage on the part of the husband.[2] Under the former decisional law, persons, either nationals or domi- ciliaries of the Philippines, might obtain a divorce decree abroad which would be considered valid and entitled to recognition in the Philippines, if they could prove that they had their *bona fide* matrimonial domicile in the jurisdiction granting the divorce de- cree.[3] However, after enactment of the new Civil Code, it appears that any foreign divorce relating to citizens of the Philippine Islands would not be recognized in that jurisdiction unless it be for a cause and under conditions for which the courts of the Philippine Islands would grant a divorce.[4]

In the light of the changes introduced by the new Philippine Civil Code, it is pertinent to inquire whether absolute divorces are entitled to recognition in the Philippines. To answer the ques- tion, it is necessary to consider separately foreign absolute divorce decrees involving: (1) spouses who are citizens of the Philippines; (2) spouses, both of whom are aliens; (3) spouses, one of whom is a citizen of the Philippines. Under the principle of nationality embodied in Article 15 of the new Code, Filipino couples cannot, strictly speaking, obtain a divorce abroad which will be entitled to recognition in the Philippines. No matter how long husband and wife, both Filipinos, may have resided in the United States, the plain meaning of Article 15 in conjunction with the policy against absolute divorces, is that a divorce decree they may obtain there will have no value in the Philippines. The result is that they are considered divorced in the United States but are still married in- sofar as Philippine law is concerned.[5]

Where the absolute divorce decree involves alien spouses, the prevailing rule in jurisdictions following the nationality principle is to recognize the decree, valid by their national law, in spite of

---

[1] Title IV, Book I, Civil Code of the Philippines (Republic Act 386, effec- tive August 1, 1950).

[2] Section 1, Act No. 2710, in force from March 1917 until August 1950.

[3] *Rimires* v. *Gmur*, 42 Phil. 855; *Gorayeb* v. *Hashim*, 50 Phil. 22; *Hix* v. *Fluemer*, 55 Phil. 851.

[4] *Barretto Gonzales* v. *Gonzales*, 58 Phil. 67; *Sikat* v. *Canson*, 67 Phil. 207; *Arca* v. *Javier*, 50 O.G. 3583 (1954).

[5] Salonga, Private International Law (2d ed.), pp. 248–9.

the fact that internal municipal law may not recognize absolute divorce but only legal separation, or divorce from bed and board.[6] If a divorced alien (not a Philippine national) residing or sojourning in the Philippines desires to marry there, the requirement imposed by law before a license is issued is for him to show that he has the capacity to marry under his national law.[7]

When only one of the spouses is a Philippine national, recognition of the divorce obtained by the non-Philippine alien will depend upon the circumstances of each case. Thus, if a Filipino woman married an American but did not acquire United States nationality by such marriage and the parties later obtained an absolute divorce in Nevada, the divorce might release the American, but it does not dissolve the marriage bond insofar as the Filipino wife is concerned from the standpoint of Philippine law. Those Philippine nationals who are determined to disengage themselves from the marital bonds may consider it worth all their expense and time to renounce their nationality, embrace a new one, and obtain a divorce which would be considered valid under the law of their new nationality. They may later return to the Philippines and remarry there, without fear of inviting judicial comment on the effect of their acts on the "good morals of the community." The doctrine is that by changing nationality, a party changes his personal law automatically; it is not a fraud against a divorce prohibition but against the law of nationality. The conflicting policies must be effectively harmonized and reconciled by an approach that takes into account all relevant considerations, such as the element of good faith, or the lack of it, on the part of one or both parties seeking a divorce, the presence or absence of an attitude of evasion, and the existence of children and their valid moral claim for protection and support.[8]

It is thus seen that while couples who are Philippine nationals cannot obtain a divorce abroad which will be entitled to recognition in the Philippines under the new Civil Code, where the divorce involves alien spouses, the foreign divorce will be recognized as valid under foreign law even though internal municipal law does not recognize absolute divorces. When only one of the spouses is a Philippine national, recognition will depend upon the circumstances of each case. In the cases before us, it appears that the petitioning husbands were long-time residents and domiciliaries of the United States and were already naturalized United States citizens at the time they obtained the divorce in this country and at the time of their remarriage in the Philippines. Marriage

[6] *Recto* v. *Harden and Harden*, G.R. No. L-6897, November 29, 1956.
[7] Article 66, Civil Code of the Philippines.
[8] Salonga, Private International Law, pp. 248, 250, 255-6.

licenses must have been obtained in each instance setting forth the marital status of the parties and showing a legal capacity to marry. Under the principles of conflict of laws set forth above, and in view of the fact that there is an absence of any showing that the marriage was repugnant to a strong public policy of the matrimonial forum, it is concluded that these marriages may be recognized as valid for immigration purposes. The visa petitions will be accordingly approved.

**Order:** It is ordered that the visa petitions be approved for nonquota status on behalf of the respective beneficiaries.